IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

CHRISTINE DODSON,

                Plaintiff,

    v.

CITY OF ASHLAND; MICHAEL BLACK; MICHAEL GARDINER,

                Defendants.

Civ. No. 1:18-cv-00847-MC

**OPINION & ORDER**

_____

McSHANE, District Judge.

Defendant City of Ashland moves for partial summary judgment dismissing Dodson's third claim for wage claim retaliation on the basis that Dodson failed to comply with the notice provisions of the Oregon Tort Claims Act ("OTCA"). This matter is appropriate for resolution without oral argument. Because Dodson failed to give timely notice of her claim, the Motion is GRANTED.

**BACKGROUND**

Plaintiff Christine Dodson was an employee of Defendant City of Ashland from 2003 until her termination on October 2, 2017. From 2007 until the date of her termination, Dodson worked as the Senior Program Director for the Ashland Senior Program. Compl. ¶ 11. ECF No. 1. The Ashland Senior Program is administered by the City, acting through the Ashland Parks and Recreation Commission ("APRC"). Compl. ¶¶ 1, 6.

In June 2015, the City informed Dodson that it had misclassified her as a salaried employee for eight years when she should have been classified as an hourly employee. Compl. ¶ 21. As a

result, Dodson was owed substantial back pay for hours worked beyond 40 hours per week. *Id.* The City offered Dodson a week of additional vacation time in lieu of back pay, which Dodson refused. Dodson Decl., ECF No. 15; Compl. ℙ 22-23. Dodson retained an attorney to pursue her wage claim against the City. Compl. ℙ 23.

During the pendency of the wage dispute, Dodson experienced a change in her relationship with her immediate supervisor, Rachel Dials, and with Defendant APRC Director Michael Black. Compl. ℙ 25. Although Dodson had previously received glowing performance reviews, Dodson Decl. Ex. 1, ECF No. 15, she found herself subject to criticism and reprimands from Dials and Black about previously uncontroversial aspects of her work. Compl. ℙℙ 25-32. As Dodson sets forth in her Declaration, "After I started to insist on being paid what I was owed, and refusing to work without being paid, I began to experience retaliation in the form of increased scrutiny, unjustified discipline, and frustration from my managers." Dodson Decl. After receiving a verbal reprimand in September 2015, Dodson submitted a written response in which she directly accused her supervisors of retaliating against her for the wage claim. Dodson Decl. Ex. 2.

On June 3, 2016, after several months of negotiation, Dodson reached a settlement agreement with the City which included substantial back pay and attorney fees. Dodson Decl.; Compl. ℙℙ 24, 32; Lohman Decl. Ex. 3. ECF No. 12. Because of her deteriorating relationships with Dials and Black, Dodson insisted on the inclusion of job-related protections in the settlement agreement. Compl. ℙ 33; Lohman Decl. Ex. 3, at 1.

Beginning on October 24, 2016, the APRC approved the establishment of a Senior Center Advisory Committee tasked with the "evaluation of the Senior Program and establish[ing] best practices, set[ting] goals and recommend[ing] the implementation of any changes to the program." Compl. ℙ 34. As the Complaint alleges in considerable detail, this reorganization process

continued through August 9, 2017, and was generally hostile to Dodson. The process eventually culminated in Dodson's termination, which the City characterizes as a "layoff." Compl. ¶¶ 109, 112. Dodson alleges this was not a layoff, but a "targeted firing," aimed at retaliating against Dodson for her opposition to the restructuring of the Senior Program, as well as for her earlier wage claim. Compl. ¶¶ 124, 134-39, 144-50. Dodson was informed of her pending termination on August 23, 2017, and her termination was effective October 2, 2017. Lohman Decl.

On January 5, 2018, Dodson's attorney sent a formal Notice of Tort Claim to the City pursuant to ORS 30.275. Lohman Decl. Ex. 1. In her notice letter, Dodson asserted that her termination was in retaliation for her having "spoke[n] out on behalf of Ashland's most needy senior citizens," during the reorganization of Senior Program. *Id.* at 2-3. Dodson accused the City of using the reorganization "layoff" as pretext for evading the job-protection provisions of the 2016 settlement agreement between Dodson and the City. *Id.* at 3-4. The letter further accused the City of retaliating against Dodson for exercising her "right to speak freely about a matter of public concern," in addition to contractual violations. *Id.* at 4.

APRC's handling of Dodson and the Senior Program proved controversial and resulted in recall proceedings against the APRC Commissioners, including Defendant Michael Gardiner. Compl. ¶¶ 122-23. In response to that recall effort, Gardiner made public statements critical of Dodson and suggesting that her termination was the result of performance issues rather than a layoff. Compl. ¶¶ 124-128. In response to those statements, Dodson's attorney sent a second letter to the City on February 14, 2018, demanding that the City cease and desist from making defamatory statements about Dodson. Lohman Decl. Ex. 2. Dodson advised the City to "consider this letter as Ms. Dodson's notice of her additional tort claims against the City of Ashland." *Id.* at 2.

On May 15, 2018, Dodson filed the present action. In her Complaint, she brings claims for (1) retaliation for the exercise of protected conduct under ORS 659A.203 against the City; (2) common law defamation against Gardiner; (3) wage claim retaliation under ORS 652.355 against the City; and (4) violation of her federal Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983 against Black.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any materials fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elect Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

Defendant City of Ashland moves for partial summary judgment dismissing Dodson's third claim, for wage claim retaliation under ORS 652.355, on the basis that Dodson failed to comply with the notice provisions of the Oregon Tort Claims Act ("OTCA").

The OTCA provides, in relevant part, that "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section." ORS 30.275(1). The plaintiff bears the burden of proving that notice of the claim was given as required. ORS 30.275(7).

The notice provision may be satisfied by formal notice, actual notice, or commencement of an action on the claim within the applicable time limit. ORS 30.275(3). "Formal notice" of a claim is written communication from the claimant or her representative containing: (1) a "statement that a claim for damages is or will be asserted against the public body or an officer, employee or agent of the public body;" (2) a "description of the time, place and circumstances giving rise to the claim, so far as known to the claimant," and; (3) the claimant's name and the address to which correspondence concerning the claim may be sent. ORS 30.275(4). Alternatively, plaintiffs may provide actual notice of their claims. "Actual notice" of a claim is "any communication by which an any individual to whom notice may be given . . . acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body" or its officers, employees, or agents. ORS 30.275(6). Finally, a plaintiff may provide notice by "[c]ommencement of an action on the claim by or on behalf of the claimant within the applicable period of time." ORS 30.275(3)(c).

The OTCA requires that notice for most claims be given within 180 days of the alleged loss or injury. ORS 30.275(2)(b). The Oregon Supreme Court has held, however, that "the limitations period for an OTCA claim for 'alleged loss or injury' does not begin to run until a 'plaintiff has a reasonable opportunity to *discover his injury* and the identity of the party responsible for that injury." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 327 (2013) (quoting *Adams v. Or. State Police*, 289 Or. 233, 239 (1980)) (emphasis in original). An injury is discovered "when a plaintiff knows or should have known of the existence of three elements: (1) harm; (2) causation; and (3) tortious conduct." *Id.* at 328. Whether a plaintiff "knew or should have known the elements of a legally cognizable claim, including the tortious nature of a defendant's act, is generally a question of fact determined by an objective standard." *Id.* at 332.

> The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or similar situation. The discovery rule does not require actual knowledge; however, mere suspicion also is insufficient. The statute of limitations begins to run when a plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists.

*Id.* at 332-33 (quoting *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011)).

"In applying that standard, a court must consider the facts from the perspective of a reasonable person in the circumstances of the plaintiff," including such factors as the relationship between the parties and the nature of the harm suffered. *Id.* at 333; *Curzi v. Or. State Lottery*, 286 Or. App. 254, 263 (2017). The Oregon Supreme Court has cautioned that "[a] court cannot decide that question a matter of law unless the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have known the critical facts at a specified time." *Lake Oswego Sch. Dist.*, 353 Or. at 333.

In the present case, Dodson was terminated on October 2, 2017. Compl. ¶ 113. Dodson gave formal notice of her claims on January 5, 2018, in a letter from her attorney to the City's counsel, with supplemental notice of claims in a second letter on February 14, 2018. Compl. ¶ 129; Lohman Decl. Exs. 1, 2. Although the letters discuss Dodson's other claims in some detail, they do not mention or discuss wage claim retaliation. The first notice the City received of Dodson's ORS 652.355 retaliation claim was in the Complaint itself, which was filed May 15, 2018, more than 180 days after Dodson's termination.

In her Response, Dodson does not dispute that her formal notice to the City does not contain any reference to a claim under ORS 652.355. Instead, Dodson argues that she did not discover the alleged wage claim retaliation until she received documents from the City as part of a pre-litigation document request on December 18, 2017. Lundberg Decl. ECF No. 14. Among those documents was a May 18, 2017, email exchange between Tina Gray, the City's Human Resources Director, and Rick Landt, one of the APRC Commissioners. In the exchange, Landt asks whether Black had done employee evaluations for APRC upper management in the previous three years and specifically whether he had done an evaluation for Dodson. Lundberg Decl. Ex. 2, at 1-2. Gray replied "Not yet. I know he [Black] has been working on it, but there have been some obstacles. For legal reasons he's had to consider the timing." *Id.* at 1.

From this, Dodson infers that the "legal reasons" delaying Black's performance evaluation were related to her June 2016 wage claim settlement with the City. Dodson believes that, after many years of positive reviews, the City intended to give her negative performance reviews in retaliation for her wage claim and that it wished to conceal the retaliation by careful consideration of the timing of the negative review. More generally, Dodson alleges that her eventual termination was motivated at least in part by the same retaliatory motive.

Dodson claims that she did not discover this retaliatory motive until the City produced the Gray-Landt emails on December 18, 2017, and that the City received adequate notice of the claim by her filing of the Complaint on May 15, 2018, pursuant to ORS 30.275(3)(c).[1]

Consistent with *Lake Oswego School District* and *Curzi*, the question before the Court is therefore whether the *only* conclusion that a reasonable factfinder could reach is that Dodson was aware or, acting as a reasonable person, should have been aware of a "substantial possibility" that each of the three elements of her claim—harm, causation, and tortious conduct—had been met more than 180 days before May 15, 2018.

Dodson considers the Gray-Landt emails to be strong evidence in support of her wage retaliation claims and argues that she had nothing more than "mere suspicion" to support a wage retaliation claim before the City produced the emails in December 2017. The Oregon Supreme Court has held that actual knowledge is not required, however. *Lake Oswego Sch. Dist.*, 353 Or. at 332-33. Dodson does not clearly explain why the vague and ambiguous language of the Gray-Landt emails caused her to suddenly realize that she was experiencing wage retaliation, nor does she clearly explain why it would have caused a reasonable person to reach the same conclusion.

Nor is Dodson's argument consistent with the allegations in the Complaint. For instance, Dodson alleges that her wage claim negatively affected her relationship with her supervisors beginning in September 2015. After she was given a verbal reprimand on September 1, 2015, Dodson alleges that "it soon became clear to Ms. Dodson that [City attorney] Mr. Lohman, Mr. Black, and Ms. Dials objected to her for insisting on her right to recover back pay and that they would seek to retaliate." Compl. ¶ 28. Dodson was concerned enough about the possibility of

---

[1] Dodson does not address why she neglected to include her wage retaliation claim in her formal tort claim notice in January 2018 or in her supplementary notice of additional claims in February 2018 if she discovered the injury in December 2017.

retaliation that she included protective provisions in her June 2016 settlement agreement. Compl. ¶ 33. From that point, Dodson's Complaint alleges an unbroken pattern of discipline, exclusion, and "pervasive and hostile criticism" until her termination in October 2017. Compl. ¶ 146. In one telling instance, which took place in September 2017, Dodson alleges that the City's attorney, who had been "heavily involved" in the wage dispute, told an Ashland resident that Dodson was a "trouble maker" and a "rabble rouser." Compl. ¶ 120. The City attorney's comment prompted a cease-and-desist letter from Dobson's attorney, demonstrating that Dodson was both aware of the attorney's comments and of circumstances linking those comments back to the original wage dispute.

Upon review of the record, the Court must conclude that Dodson knew, or in exercise of reasonable care should have known, of facts that would make a reasonable person aware of a substantial possibility of the elements of her wage retaliation claim by the date of her termination on October 2, 2017. In light of the allegations in the Complaint and the exhibits in the record, no reasonable factfinder could come to a contrary conclusion. As October 2, 2017, is more than 180 days before the Complaint was filed, Dodson has failed to give timely notice of her claim as required by ORS 30.275. Accordingly, the City's motion is GRANTED.

## CONCLUSION

For the reasons set forth above, Defendant City of Ashland's Partial Motion for Summary Judgment is GRANTED and Plaintiff's third claim for relief, for retaliation in violation of ORS 652.355 is DISMISSED with prejudice.

It is so ORDERED and DATED this  4th  day of March, 2019.

                                                  s/Michael J. McShane
                                                  MICHAEL McSHANE
                                                  United States District Judge